# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| GARY WALL, | ) |
|     Plaintiff, | ) |
| | )    Civil Action No. 7:16cv00305 |
| v. | ) |
| | )    **MEMORANDUM OPINION** |
| R. MEFFORD, et al., | )    By: Hon. Pamela Meade Sargent |
|     Defendants. | )    United States Magistrate Judge |

The plaintiff, Gary Wall, ("Wall"), an inmate incarcerated at Red Onion State Prison, ("Red Onion"), and proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendants, all of whom were or are correctional officers at Red Onion, have violated his constitutional rights to privacy, free speech, and access to the courts and counsel. Wall alleges that his constitutional rights were violated by the defendants' monitoring and/or recording of his consultations with an attorney who represented him on pending state court criminal charges. This case is before the court on the parties' cross motions for summary judgment, (Docket Item Nos. 53, 56, 62) (collectively "Motions"). None of the parties has requested a hearing on the Motions, making the matters ripe for disposition. For the reasons contained in this Memorandum Opinion, I will deny Wall's motion for summary judgment and I will grant the defendants' motions for summary judgment on all claims except Wall's claims of violation of his right to counsel and his freedom of speech.

1

# I. Facts[1]

In his sworn Second Amended Complaint, (Docket Item No. 29-1), Wall alleged that, on April 5, 2016, he was escorted to the Common Visitation Room at Red Onion for a consultation with Lonnie L. Kern, ("Kern"), an attorney who had been appointed by the Wise County Circuit Court to represent Wall on two criminal assault and battery charges set for trial on May 27, 2016. Wall alleged that Control Booth Officer E. Rasnick instructed the escorting correctional officers to place Wall in Booth #10 and, then, told Officer R. Mefford that Wall's attorney visit "needed to be recorded." Wall stated he was placed in Segregation Booth #10 with his attorney, Kern, seated in the Common Visitation Room, ("Visitation Room"), on the other side of a window in Booth #10.

Wall alleged that the Visitation Room at that time was equipped with rapid-eye surveillance cameras, which could record video but not audio. Wall stated that, after being placed in the booth, he saw Mefford place a small, handheld Sony video camera on a vending machine approximately 6 feet from where Kern was seated. Wall described the video camera as one capable of recording both video and audio and said that Mefford pointed the camera directly at Wall and Kern. Wall alleged that he saw a red light on the camera, indicating it was recording, so he did not feel comfortable discussing his cases with Kern, knowing that his conversation with Kern was being recorded. Wall further alleged that, a short time later, Correctional Officer J. Testerman came and sat down in the Common

---

[1] On a motion for summary judgment, the court may review a number of materials to determine whether a genuine dispute of any material fact exists, including sworn testimony, affidavits, sworn pleadings, discovery responses and other materials contained in the record. *See* FED. R. CIV. P. 56(c)(1).

Visitation Room approximately 8 feet from Booth #10 and listened to the conversation between Wall and Kern. At that point, Wall stated, he indicated to Kern that he "was done talking" because Testerman could overhear their conversation.

Wall alleged that he met with Kern at Red Onion again on April 16, 2016. Wall stated that, on this occasion, there was no handheld camera or correctional officer who could overhear the conversation present in the Visitation Room. Wall stated that Kern informed him that, when Kern had scheduled the April 5 meeting, he had been assured that the meeting would occur when no one else was present in the Visitation Room.

Wall alleged that he had a third meeting with Kern at Red Onion on April 26, 2016. During this meeting, Wall alleged, Officer J. Barker stayed in the Visitation Room and repeatedly walked through the room, lingering in the area of Booth #10, overhearing Wall's conversation with Kern. Wall stated that he, again, told Kern that he was uncomfortable talking with him about the pending criminal charges while correctional officers were monitoring their conversation. Wall also alleged that, subsequent to his meetings with Kern, he learned that other Red Onion inmates had been required to conduct meetings with criminal defense attorneys under similar circumstances.

Wall also has supplied an Affidavit to the court for consideration on the Motions. (Docket Item No. 61-1.) In this Affidavit, Wall alleged that defendant Rasnick was named as a victim in the Wise County assault and battery charges on which Kern was appointed. Wall attached a copy of the Indictment against him to his Affidavit. (Docket Item No. 61-4.) Wall also alleged that Virginia Department

of Corrections, ("VDOC"), Operating Procedure, ("OP"), 866.3 states: "All offenders … shall have access to counsel and confidential communications with licensed attorneys through … visits." Wall also attached a copy of OP 866.3 to his Affidavit. (Docket Item No. 61-8.) Wall further alleged that OP 851.1 states: "Communications between Attorney and Offender will be monitored only by sight." Wall also attached a copy of OP 851.1 to his Affidavit. (Docket Item No. 61-9.) A review of OP 851.1 shows that it states: "Conversations between attorneys and offenders will be monitored only by sight." (Docket Item No. 61-9 at 10.) Walls also attached a copy of the Red Onion Visitation Post log book showing that Mefford signed the log book on April 5, 2016, stating that Wall's visit with "Attorney L. Kern" began at 1:45 p.m. and was completed at 2:49 p.m. (Docket Item No. 61-15 at 2.)

In support of their motions, the defendants have submitted an Affidavit from D. Still, a Captain at Red Onion. (Docket Item No. 54-1.) In this Affidavit Still stated that Wall was placed in Booth #10 and his counsel, Kern, was placed in the visitation room for their April 5, 2016, meeting. Still stated that the glass in the window in Booth #10 had been removed and replaced with a mesh screen that allowed attorneys and offenders to hear each other without the use of a telephone. Still stated that, because contact visits were scheduled to take place in the visitation room on April 5, 2016, a video camera was placed inside of the visitation room for security purposes to monitor the offender contact visits. Still said that this was standard practice at Red Onion during offender visits. He stated that the video camera was not pointed directly at Wall and Kern and was located "nearly" 20 feet away from Wall and Kern. Still stated, "The video did not and would not have picked up any audio feed from the visit offender Wall had with his attorney. Further, if no security incidents arise in the visitation room, the video is erased – as

4

was the case for the video that was recorded on the above date for offender Wall's visit with his attorney." Still also stated, "attorney visits are not typically scheduled on a day that there are contact visits in the visitation room so this was a rare occurrence."

Defendant Testerman also submitted an Affidavit in support of the defendants' motions. (Docket Item No. 54-2.) In this Affidavit, Testerman stated:

> On April 5, 2016, I did not go to the visitation room, sit with my back facing offender Wall and engage in listening to him and his attorney's conversation as he alleges. I do not listen to any offender's conversations when I am assigned to the visitation room, rather I monitor the visitation room and occasionally move throughout the room to monitor the offenders['] visitations.

Defendant Barker also submitted an Affidavit in support of the defendants' motions. (Docket Item No. 54-3.) In this Affidavit, Barker stated:

> On April 26, 2016, I was not assigned to the visitation room. I was actually assigned to C-building on that date. I do not recall being in the visitation room that day and I do not recall making any rounds around booth 10 to hear any conversation between [Wall] and his attorney as he alleges in his lawsuit.

Defendant Mefford also submitted an Affidavit in support of the defendants' motions. (Docket Item No. 54-4.) In this Affidavit, Mefford stated:

> On April 5, 2016, I was not assigned to the visitation room for offender visitation but I do recall being in the visitation room at some point on that day. However, concerning offender Wall's allegations in his lawsuit, I was not instructed by Corrections Officer E. Rasnick to set up a video camera inside of the visitation room on the above date

5

> nor did I set a camera on top of a soda machine in the visitation room and point it towards offender Wall's attorney as he alleges.

## *II. Analysis*

With regard to a motion for summary judgment, the standard for review is well-settled. The court should grant summary judgment only when the pleadings, responses to discovery and the record reveal that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587. In order to be successful on a motion for summary judgment, a moving party "must show that there is an absence of evidence to support the non-moving party's case" or that "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore, Ky.,* 93 F.3d 230, 233 (6th Cir. 1996). When a motion for summary judgment is made and is properly supported by affidavits, depositions or answers to interrogatories, the nonmoving party may not rest on the mere allegations or denials of the pleadings. *See Oliver v. Va. Dep't of Corrs.*, 2010 WL 1417833, at *2 (W.D. Va. Apr. 6, 2010) (citing FED. R. CIV. P. 56(e)). Instead, the nonmoving party must respond by affidavits or

otherwise and present specific facts from which a jury could reasonably find for either side. *See Anderson*, 477 U.S. at 256-57.

In their motions for summary judgment, the defendants argue that Wall, as a prisoner, had no protected right to privacy, and, if he did, their actions did not violate this right. The defendants also argue that, while as a prisoner, Wall possessed certain rights to free speech and to access the courts and counsel, nonetheless, their actions did not violate these rights either. They further argue that Wall has failed to show that any alleged violation of his right to access the courts resulted in actual injury. The defendants also argue that § 1983 does not allow claims for monetary damages against defendants' sued in their official capacities and that they are protected from Wall's claims by qualified immunity. In his motion for summary judgment, Wall argues simply that there is no genuine dispute of fact and he is entitled to judgment as a matter of law.

Based on the evidence presented, there are numerous disputes of fact before the court. Therefore, the court must view the facts with regard to each motion in the light most favorable to the nonmoving party. Assuming the facts alleged by Wall are true, the court, nonetheless, will enter summary judgment in favor of the defendants on Wall's claims that their actions violated his right to privacy and his right to access the courts. The court will deny the defendants' motions as to Wall's claims that their actions violated his right to counsel and his free speech rights. The court also will deny Wall's motion.

I start my analysis by recognizing that prison inmates do not lose their constitutional rights upon incarceration. *See Hudson v. Palmer*, 468 U.S. 517, 523 (1984); *Ballance v. Young*, 130 F. Supp. 2d 762, 766 (W.D. Va. 2000). In

7

particular, prisoners must "be accorded those rights not fundamentally inconsistent with imprisonment itself or incompatible with the objectives of incarceration." *Hudson*, 468 U.S. at 523. Although not unlimited, the courts have recognized that inmates retain some limited right to privacy. *See Lee v. Downs*, 641 F.2d 1117, 1119-20 (4th Cir. 1981). Furthermore, inmates retain rights to free speech, to access the courts and to access counsel. *See Hudson*, 468 U.S. at 523; *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974); *Balance*, 130 F. Supp. 2d at 767. These rights, however, may be limited or, in some cases, lost, due to "the realistic demands of prison enforcement and from 'valid penological objectives – including deterrence of crime, rehabilitation of prisoners and institutional security.'" *Balance*, 130 F. Supp. 2d at 766 (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)); *see also Hudson*, 468 U.S. at 524. Also, this court previously has stated that a prisoner is deprived of the effective aid of counsel, if he is not allowed the right of private consultation with his criminal defense attorney. *See Smith v. Peyton*, 276 F. Supp. 275, 277 (W.D. Va. 1967).

Under the Sixth Amendment, an accused has the right to the effective assistance of counsel, and the "essence" of this right is "privacy of communication with counsel." *United States v. Brugman*, 655 F.2d 540, 546 (4th Cir. 1981). Further, these rights were clearly established long before the events at issue in this case. *See Pearson v. Callahan,* 555 U.S. 223 (2009); *Saucier v. Katz*, 533 U.S. 194 (2001). In Smith, this court recognized that the posting of a guard in the same room with a criminal defendant while he conferred with his attorney before trial did not prevent the attorney from rendering effective assistance of counsel since the guard did not "infringe on the privacy of the accused's conversation with his attorney." *Smith*, 276 F. Supp. at 277.

8

To the contrary, in this case, Wall has provided specific evidence of attempts to infringe on the privacy of his conversations with counsel. In particular, Wall has provided evidence from which a jury could find that defendant Mefford, on the instruction of defendant Rasnick, deployed a video camera in an effort to record Wall's April 5, 2016, consultation with defense counsel. Wall also has provided evidence that defendant Testerman came and sat down near counsel and listened to his conversation with counsel on April 5. Wall also has provided evidence that, during his attempted consultation with counsel on April 26, 2016, defendant Barker stayed in the room and repeatedly walked through the room, lingered near Wall's defense counsel and overheard Wall's conversation with counsel. Wall also has provided evidence that he ended his attempts to consult with counsel on both of these occasions when he realized their conversations were not private.

Here, viewing the facts in the light most favorable to Wall, the defendants either ordered others to interfere with, or themselves interfered with, Wall's attempts to have private consultations with his criminal defense attorney. Such evidence, if found to be true by the jury, would support Wall's § 1983 claim for violation of his Sixth Amendment right to counsel. On the other hand, if the jury believes the evidence provided by the defendants, the jury could find in the defendants' favor. Therefore, on this claim, I deny both Wall's and the defendants' motions.

With regard to Wall's claim that the defendants' actions violated his right to privacy, it is well-settled that prison inmates have little, if any, reasonable expectation of privacy. *See Hudson*, 468 U.S. at 527 (A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells…."). It also has been held that

a prisoner's right of privacy is not violated when prison officials monitor conversations with visitors. *See Christman v. Skinner,* 468 F.2d 723, 726 (2nd Cir. 1972) (citing *Lanza v. New York*, 370 U.S. 139 (1962)); *Rodriguez v. Blaedow*, 497 F. Supp. 558, 559 (E.D. Wis. 1980). At least one court, however, has held that a prisoner's general right to privacy is implicated when a prisoner is denied private consultations with counsel. *See Williams v. Price*, 25 F. Supp. 2d 623, (W.D. Pa. 1998). *See also Lonegan v. Hasty*, 436 F. Supp. 2d 419 (E.D. N.Y. 2006) (attorneys possessed a constitutionally protected reasonable expectation of privacy in their conversations with incarcerated clients). Nonetheless, at least one other court has held that, even if such a right of privacy exists, it was not "clearly established" law required to strip the defendants of the protection of qualified immunity. *See McWright v. Gerald*, 2004 WL 768641 (E.D. Mich. Mar. 26, 2004). Based on my review of the controlling case law in this Circuit, I agree. I will deny Wall's motion and grant the defendants' motions on this claim, and I will enter summary judgment in favor of the defendants' favor on this claim based on qualified immunity.

With regard to his free speech claim, Wall has produced evidence that the defendants' actions in monitoring his conversations with counsel deterred him from speaking freely with counsel. "…[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *see also Pittman v. Hutto*, 594 F.2d 407, 410 (4th Cir. 1979). Based on penological interests, courts have held that prisons may ban interviews by the media with specific inmates, *see Pell*, 417 U.S. 817, mailings between prison inmates, *see Turner v. Safley*, 482 U.S. 78 (1987), and even any talking by and among prisoners while in corridors, sidewalks and dining halls or while

working without violating prisoners' free speech rights, *see Lamar v. Coffield*, 353 F. Supp. 1081 (S.D. Texas 1972); *Taylor v. Ozmint,* 2011 WL 286133 (D. S.C. Jan. 7, 2011); *Duncan v. Quarterman*, 2009 WL 2614395 (N.D. Texas Aug. 26, 2009). Despite numerous recognized restrictions, it, nonetheless, appears clearly established that prisoners retain the right to freely communicate with counsel. *See McDonough v. Dir. of Patuxent*, 429 F.2d 1189, 1192 (4th Cir. 1970); *Williams,* 25 F. Supp. 2d at 629-30; *see also Adams v. Carlson,* 488 F.2d 619 (7th Cir. 1973) (whether stemming from a First Amendment right of access the courts or a right to effective counsel under the Sixth Amendment, a prisoner has a right of access to counsel along with the right of confidential communications with counsel); *Goodwin v. Oswald*, 462 F.2d 1237 1241 (2nd Cir. 1972) (prisoners' First Amendment right of access to the courts requires the right to the assistance of counsel, which, in turn, requires the opportunity for confidential communications with counsel); *Moore v. Ciccone*, 459 F.2d 574, 578 (8th Cir. 1972) (quoting *Smith v. Robbins*, 454 F.2d 696, 697 (1st Cir. 1972)).

It is important to note that the defendants in this case do not assert that their alleged actions were justified by an interest in ensuring the safety and security of the prison environment. Instead, the defendants assert that they did not interfere with Wall's right to speak privately with his counsel. That being the case, there is a genuine dispute of material fact that prevents entry of summary judgment in any party's favor on this claim.

With regard to Wall's claim of denial of his right of access to the courts, the defendants correctly argue that that summary judgment should be entered in their favor on that specific claim because Wall has produced no evidence that he suffered any actual injury. *See Lewis v. Casey,* 518 U.S. 343, 351 (1996). In fact,

Wall admitted in his Complaint that he was allowed to meet privately with his counsel at Red Onion on April 16, 2016. Further, Wall has offered no evidence that the defendants' alleged attempts to interfere with his right to counsel did, in fact, prevent his counsel from effectively representing him. That being the case, I find that there is no genuine dispute of material fact, and I will deny Wall's motion, grant the defendants' motions and enter summary judgment in the defendants' favor of this claim.

Based on the above, I will deny Wall's motion for summary judgment and the defendants' motions for summary judgment as to Wall's claim based on violation of his right to counsel and his free speech rights. I will grant the defendants' motions as to Wall's other claims.

The court will enter an appropriate order.

**ENTERED:** March 19, 2018.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE